# EXHIBIT D

Filed for Record
3/1/2023 11:59 AM
Cassandra C. Tigner, District Clerk
Brazoria County, Texas
121844-CV
Alyssa Cook, Deputy

CAUSE NO. ___121844-CV___

| | | |
|---|---|---|
| SHELTON HOWARD | § | IN THE DISTRICT COURT OF |
| | § | |
| v. | § | BRAZORIA COUNTY, TEXAS |
| | § | |
| AMERIHOME MORTGAGE | § | |
| COMPANY, LLC | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION, APPLICATION FOR INJUNCTIVE RELIEF, DEMAND FOR ACCOUNTING, AND REQUEST FOR DISCLOSURES

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Shelton Howard, Plaintiff herein, filing this his Original Petition, Application for Injunctive Relief, Demand for an Accounting, and Request for Disclosures complaining of AmeriHome Mortgage Company, LLC, Defendant herein, and for causes of action would respectfully show the Court as follows:

### DISCOVERY

1.     Plaintiff intends to conduct discovery under Texas Rules of Civil Procedure 190.3 (Level 2).

### PARTIES

2.     Shelton Howard is an individual who resides in Brazoria County, Texas and may be served with process on the undersigned legal counsel.

3.     AmeriHome Mortgage Company, LLC is a foreign entity headquartered in the State of Deleware which may be served with process as follows:

AmeriHome Mortgage Company, LLC
c/o C T Corporation System
1999 Bryan St., Ste. 900
Dallas, TX 75201

POOR ORIGINAL

## JURISDICTION AND VENUE

4.     The Court has jurisdiction over AmeriHome Mortgage Company, LLC because the Defendant is a foreign entity headquartered in the State of Idaho which conducts business in Brazoria County, Texas.

5.     The Court has jurisdiction over the controversy because the damages are within the jurisdictional limits of the Court. Venue is mandatory in Brazoria County, Texas because the subject matter of this lawsuit involves real property which is located in Brazoria County, Texas. Further, all or a substantial part of the events or omissions giving rise to Plaintiff's causes of action occurred in Brazoria County, Texas thus venue is proper under §15.002(a)(1) of the Texas Civil Practice and Remedies Code.

## RELEVANT FACTS

6.     The subject matter of this lawsuit is the real property and the improvements thereon located at 3902 Houston Lake Dr., Pearland, TX 77581(the "Property").

7.     Shelton Howard ("Plaintiff") purchased the Property on or about December 29, 2014. During the process of purchasing the Property, Plaintiff executed a Promissory Note ("Note") in the amount of $277,500.00 as well as a Deed of Trust through a Department of Veterans Affairs loan (VA Case No. 626261231322) in which Aspire Financial, Inc D/B/A Aspire Lending is listed as the Lender. A true and correct copy of the Deed of Trust is attached hereto as Exhibit "1" and incorporated herein for all purposes.

8.     Upon information and belief, the Note and related Deed of Trust were subsequently transferred to AmeriHome Mortgage Company, LLC ("AmeriHome" or "Defendant") which also acts as the loan servicer.

9.      As Plaintiff was starting to face financial difficulties due to the COVID-19 pandemic, he contacted AmeriHome to pursue loss mitigation options - Defendant granted him a Covid-19 Forbearance and promised him they would restructure the debt to be on comparable or more favorable terms to Plaintiff once the forbearance period expired. After the forbearance period expired, Plaintiff contacted AmeriHome to see when his payment was going to resume.

10.     Defendant granted him a Trial Loan Modification changing his monthly payments from $1,850 to $6,385 a month even though his income was only $7,000; which is contrary to what Defendant said when they convinced Plaintiff into entering the forbearance agreement, thus effectively setting Plaintiff up to fail. This of course, made it hard for Plaintiff to pay the rest of his bills and as a result of expenses Plaintiff had to incur because of the winter storm in early 2023 Plaintiff was unable to pay this excessive mortgage payment.

11.     Instead of following proper procedure pursuant to the Texas Property Code as well as the related Deed of Trust, AmeriHome failed to provide face-to-face counseling pursuant to VA Regulations incorporated in the VA Guaranteed Loan and Assumption Policy Rider of the Deed of Trust under The V.A. Guaranteed Loan Covenant as well as violated Plaintiff's due process rights by simply posting his Property for foreclosure sale. Specifically, the foreclosure scheduled to be conducted by AmeriHome should be void as a matter of law because AmeriHome did not provide Plaintiff with the statutory notices pursuant to Section 15 of the Deed of Trust. AmeriHome's failure to provide Plaintiff with the statutory notices deprives Plaintiff of his due process rights and the opportunity to cure pursuant to Sections 19 and 22 of the Deed of Trust.

12.     Accordingly, Plaintiff alleges that AmeriHome is about to wrongfully sell his Property at a foreclosure sale on March 7, 2023 without providing the required notices in violation of VA Regulations and in violation of Plaintiff's due process rights. A true and correct

copy of the Appointment of Substitute Trustee and Notice of Trustee Sale is attached hereto as Exhibit "2" and incorporated herein for all purposes.

## FIRST CAUSE OF ACTION:
## DECLARATORY JUDGMENT

13.     To the extent not inconsistent herewith, Plaintiff incorporates by reference the allegations made in paragraphs 1 through 12 as if set forth fully herein.

14.     Plaintiff seeks a determination of the rights of the parties pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 37.001, *et seq.* (West).  In particular, Plaintiff seeks a determination that the pending foreclosure sale of his Real Property is wrongful because Defendant failed to properly follow the procedures as set forth in the Deed of Trust, Texas Property Code, as well as the Texas Constitution.

15.     Further, Plaintiff seeks a determination that the pending foreclosure sale of his Real Property is wrongful because Defendant was enjoined from taking any action whatsoever to foreclose on Plaintiff's Property without first complying with the Texas Property Code and the VA Regulations incorporated in the Deed of Trust.

### A.     Notice of Trustee's Sale

16.     Section 51.002 of the Texas Property Code governs the sale of real property under deeds of trust or other contract liens. Tex. Prop. Code Ann. § 51.002 (West); *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 569 (Tex. 2001).  In particular, section 51.002(d) provides that "[n]otwithstanding any agreement to the contrary, the mortgage servicer ... shall serve a debtor in default ... with written notice by certified mail stating that the debtor is in default ... and giving the debtor at least 20 days to cure the default before notice of the sale can be given." *Id.* § 51.002(d). Section 51.002(b) states that notice of sale, in turn, must be given at least twenty-one days before the date of the sale and specifies various locations where the notice must

be made available. *Id.* §§ 51.002(b)(1)-(3). In addition to the minimum statutory requirements, the deed of trust executed by the debtor-mortgagor usually details the agreed contractual terms and conditions for foreclosure of real property.

**B.   Amount of Debt**

17.   If the note secured by the property is an installment note payable in periodic payments, acceleration of an installment debt requires demand be made and an opportunity to cure the default be given. If the notice does not inform prospective bidders of the terms, conditions and amounts of the outstanding indebtedness, it can be argued the notice is ipso facto invalid. Even strong supporters of creditor's rights suggest the better practice is to detail the default to the extent necessary to provide the mortgagor an opportunity to cure the default in the notice of sale. *See* Baggett, Texas Foreclosure Law and Practice, § 2.27 (1984).

**SECOND CAUSE OF ACTION:**
**BREACH OF CONTRACT**

18.   To the extent not inconsistent herewith, Plaintiff incorporates by reference the allegations made in paragraphs 1 through 17 as if set forth fully herein.

19.   The actions committed by Defendant constitutes breach of contract because:

   A.   There exists a valid, enforceable contract (in addition to the Deed of Trust) between Plaintiff and Defendant whereby Defendant stated that they would restructure the debt to be on comparable or favorable terms to Plaintiff once the forbearance period expired;

   B.   Plaintiff has standing to sue for breach of contract;

   C.   Plaintiff performed his contractual obligations under the Deed of Trust.

   D.   Defendant breached the parties' agreement by not restructuring the debt under comparable or more favorable terms as well as violating the Deed of

Trust by failing to send all required foreclosure notices to Plaintiff at the proper address, as well as violating VA Regulations and not conducting a face-to-face counseling session before even starting the foreclosure process; and

E.    The breaches of contract by Defendant caused Plaintiff's injury – actual damages which include, but are not limited to, loss of alternative loss mitigation options, violating Plaintiff's due process rights, litigation cost, interest on the balance of unpaid mortgage payments since the filing of this lawsuit, and damage to Plaintiff's credit.

## THIRD CAUSE OF ACTION:
## VIOLATION OF TEXAS PROPERTY CODE §51

20.    To the extent not inconsistent herewith, Plaintiff incorporates by reference the allegations made in paragraphs 1 through 19 as if set forth fully herein.

21.    Pursuant to the provisions of the Texas Property Code, the holder of a note must ordinarily give notice to the maker of the holder's intent to accelerate the time for payment as well as notice of acceleration. If the mortgagee intends to accelerate the maturity of the debt, the notice must unequivocally inform the mortgagor of the mortgagee's intention. A proper notice of default must give the borrower notice that the alleged delinquency must be cured; otherwise, the loan will be accelerated, and the property will go to foreclosure. Prior to a foreclosure action, the noteholder is also required to give the homeowners clear and unequivocal acceleration notice. Effective acceleration requires two acts: notice of intent to accelerate and notice of acceleration.

22.    The actions committed by AmeriHome constitutes violations of the Texas Property Code §51 because AmeriHome never sent proper and timely notice of default, the opportunity to cure the default, notice of intent to accelerate the debt, notice of acceleration, and notice of

foreclosure sale which are required in order for AmeriHome to foreclose on its lien rights to the Property.

**FOURTH CAUSE OF ACTION:**
**VIOLATION OF THE CODE OF FEDERAL REGULATIONS TITLE 38**

23. To the extent not inconsistent herewith, Plaintiff incorporates by reference the allegations made in paragraphs 1 through17 as if set forth fully herein.

24. This mortgage is a loan backed by the United States Department of Veteran Affairs in which Plaintiff is the borrower and Defendant is the lender and is therefore subject to the Code of Federal Regulations.

25.     The intent of Title 38 in the CFR is to set forth the regulations for Pensions, Bonuses, and Veterans' Relief; Chapter 1 §36 regulated how loans backed by the VA are to be serviced by lenders.

26.     Specifically, Defendant violated CFR 38 §36.4346(h) in which Defendant was to have a face-to-face meeting with Plaintiff before even considering pursuing a foreclosure in the event of a default by a mortgager. To date Defendant has yet to attempt to schedule such a meeting let alone have it.

**DEMAND FOR ACCOUNTING**

27.     Plaintiff hereby requests an Order demanding an accounting of all transactions on his mortgage loan.

**DAMAGES:**
**ACTUAL DAMAGES**

28.     Plaintiff is entitled to recover his actual damages from Defendant for which Plaintiff pleads in an amount which does not exceed the jurisdictional limits of this Court.

## APPLICATION FOR TEMPORARY RESTRAINING ORDER

35.     To the extent not inconsistent herewith, Plaintiff incorporates by reference the allegations made in paragraph 1 through paragraph 37 as if set forth fully herein.

36.     Unless Defendant is enjoined, Plaintiff will suffer probable harm which is imminent and irreparable since Defendant is about to sell Plaintiff's Property at a foreclosure sale on March 7, 2023 thereby depriving Plaintiff of ownership of the Property. Plaintiff has no adequate remedy at law because the subject matter is real property and any legal remedy of which Plaintiff may avail himself will not give him as complete, equal, adequate, and final a remedy as the injunctive relief sought in this Application.

37.     Therefore, Plaintiff request that this Court issue a Temporary Restraining Order and, thereafter, a Temporary Injunction, to restrain Defendant from selling the real property which is the subject matter of this lawsuit commonly known as 3902 Houston Lake Dr., Pearland, TX 77581.

38.     Plaintiff further requests that, upon trial on the merits, Defendant be permanently enjoined from the same acts listed in Paragraph 37 above.

39.     Plaintiff is likely to prevail on the merits of the lawsuit as described above.

40.     The granting of the relief requested is not inconsistent with public policy considerations.

## BOND

41.     Plaintiff is willing to post a reasonable temporary restraining order bond and requests that the Court set such bond.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that:

A.  Defendant be cited to appear and answer herein;

B.  The Court conduct a hearing on Plaintiff's Application for Injunctive Relief;

C.  A Temporary Restraining Order be issued restraining Defendant, its agents, employees, officers, directors, shareholders, and legal counsel, and those acting in concert or participation with them who receive actual notice of the Order, by personal service or otherwise, from selling the real property which is the subject matter of this lawsuit and is commonly known as 3902 Houston Lake Dr., Pearland, TX 77581;

D.  A Permanent Injunction be entered enjoining Defendant from the same acts listed in Paragraph C above; and

E.  Upon final hearing or trial hereof, the Court order a judgment in favor of Shelton Howard against AmeriHome Mortgage Company, LLC for his actual damages, mental anguish damages, exemplary damages, reasonable attorneys' fees, all costs of court, and such other and further relief, both general and special, at law or in equity, to which Plaintiff may be entitled.

Respectfully submitted,

VILT LAW, P.C.

By: _____
        ROBERT C. VILT
        Texas Bar Number 00788586
        Email: clay@viltlaw.com
5177 Richmond Avenue, Suite 1142
Houston, Texas 77056
Telephone:    713.840.7570
Facsimile:    713.877.1827
ATTORNEYS FOR PLAINTIFF

CAUSE NO. _____

| | | |
|---|---|---|
| **SHELTON HOWARD** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **v.** | § | **BRAZORIA COUNTY, TEXAS** |
| | § | |
| **AMERIHOME MORTGAGE** | § | |
| **COMPANY, LLC** | § | **_____ JUDICIAL DISTRICT** |

## AFFIDAVIT OF SHELTON HOWARD

| | | |
|---|---|---|
| **STATE OF TEXAS** | § | |
| | § | **KNOW ALL MEN BY THESE PRESENTS** |
| **COUNTY OF BRAZORIA** | § | |

BEFORE ME, the undersigned authority, on this day personally appeared Shelton Howard who, after being duly sworn, deposes and says:

1. My name is Shelton Howard. I am the Plaintiff in the above-captioned lawsuit. I have read the Original Petition, Application for Injunctive Relief, Demand for an Accounting, and Request for Disclosures to which this Affidavit relates and offer this Affidavit in support of the statements and arguments asserted therein.

2. The subject matter of this lawsuit is the real property and the improvements thereon located at 3902 Houston Lake Dr., Pearland, TX 77581(the "Property").

3. My wife and I purchased the Property on or about December 29, 2014. During the process of purchasing the Property, I executed a Promissory Note ("Note") in the amount of $277,500.00 as well as a Deed of Trust through a Department of Veterans Affairs loan (VA Case No. 626261231322) in which Aspire Financial, Inc D/B/A Aspire Lending is listed as the Lender.

4. Upon information and belief, the Note and related Deed of Trust were subsequently transferred to AmeriHome Mortgage Company, LLC ("AmeriHome" or "Defendant") which also acts as the loan servicer.

5. As I was starting to face financial difficulties due to the COVID-19 pandemic, I contacted AmeriHome to pursue loss mitigation options - AmeriHome granted me a Covid-19 Forbearance and promised me they would restructure the debt to be on comparable or more favorable terms to me once the forbearance period expired. After the forbearance period expired, I contacted AmeriHome to see when my payment was going to resume.

6. AmeriHome granted me a Trial Loan Modification changing my monthly payments from $1,850 to $6,385 a month even though my income was only $7,000; which is contrary to what AmeriHome said when they convinced me into entering the forbearance agreement, thus effectively setting me up to fail. This of course, made it hard for me to pay the rest of my bills and as a result of expenses I had to incur because of the winter storm in early 2023 I was unable to pay this excessive mortgage payment.

7. Accordingly, I allege that AmeriHome is about to wrongfully sell my Property at a foreclosure sale on March 7, 2023 without providing the required notices in violation of VA Regulations and in violation of my due process rights.

8. The latest foreclosure posting has severely affected my personal and professional life. I have trouble sleeping and focusing on simple tasks. My anxiety level as reached a level I have never experienced in my life and my stress level has negatively impacted both my business and my family life.

I have read the foregoing Affidavit and attest that the information contained therein is true and correct in all respects based upon my personal knowledge.



SHELTON HOWARD

SUBSCRIBED AND SWORN TO BEFORE ME on this the 28th day of February 2023.

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

My commission expires:
09/28/2026

JAYDRIN MEDINA
NOTARY PUBLIC
ID# 133869442
State of Texas
Comm. Exp. 09-28-2026

# Exhibit 1

AFTER RECORDING RETURN TO:
ASPIRE FINANCIAL, INC. DBA ASPIRE LENDING
4100 ALPHA ROAD, SUITE 400
DALLAS, TEXAS 75244

This instrument was prepared by:
MCGLINCHEY, STAFFORD AND YOUNGBLOOD & ASSOCIATES, LLP
DAVID PEDERSON
2711 NORTH HASKELL AVENUE, SUITE 2700
DALLAS, TX  75204
214-257-1700

Loan Number

[Space Above This Line For Recording Data]

# DEED OF TRUST

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

VA Case Number: 626261231322

MIN: **100372700000150907**
SIS Telephone #: **(888) 679-MERS**

# NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "**Security Instrument**" means this document, which is dated December 29, 2014, together with all Riders to this document.

---

TEXAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS
Page 1 of 14

IDS, Inc.

ΛTCH1₄0₄₆2₄2

Form 3044 1/01

Borrower(s) Initials SА  NH



FILED BY
ALAMO TITLE COMPANY

(B) **"Borrower"** is SHELTON HOWARD AND NIKIA R. HOWARD, HUSBAND AND WIFE. Borrower is the grantor under this Security Instrument.

(C) **"Lender"** is ASPIRE FINANCIAL, INC. DBA ASPIRE LENDING. Lender is A CORPORATION, organized and existing under the laws of THE STATE OF TEXAS.
Lender's address is 4100 ALPHA ROAD, SUITE 400, DALLAS, TEXAS 75244. Lender includes any holder of the Note who is entitled to receive payments under the Note.

(D) **"Trustee"** is MICHAEL BURNS, ATTORNEY AT LAW, ANDERSON, BURNS AND VELA, LLP
Trustee's address is 8111 LBJ FREEWAY, SUITE 1501, DALLAS, TEXAS 75251, DALLAS County.

(E) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) **"Note"** means the promissory note signed by Borrower and dated December 29, 2014. The Note states that Borrower owes Lender TWO HUNDRED SEVENTY-SEVEN THOUSAND FIVE HUNDRED AND NO/100 Dollars (U.S. $277,500.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than January 1, 2045.

(G) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(H) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☒ VA Rider |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | |
| ☐ Other [Specify] | | |

(J) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items"** means those items that are described in Section 3.

(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

TEXAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS       Form 3044 1/01
Page 2 of 14
IDS, Inc.                                                      Borrower(s) Initials SA NH

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 *et seq.*) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of **BRAZORIA**:

> **LOT 17, IN BLOCK 2, OF SECOND AMENDING PLAT OF TOWNE LAKE ESTATES, SECTION TWO A SUBDIVISION IN BRAZORIA COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 24, PAGES 72-73, OF THE PLAT RECORDS OF BRAZORIA COUNTY, TEXAS.**

Parcel ID Number: 80392002017

which currently has the address of:   **3902 HOUSTON LAKE DRIVE**
                                       **PEARLAND, TEXAS 77581**                                ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower

---

TEXAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS                                           Form 3044  1/01
                                          Page 3 of 14
IDS, Inc.                                                                              Borrower(s) Initials  SA   NH



shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

---

IDS, Inc.

Borrower(s) Initials _SH_ _NH_



Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified___
under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds
due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable
Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if
Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow
Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually
analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law
permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds,
Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however,
that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by
RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in
accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required
by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more
than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as
required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in
no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by
Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can
attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues,
Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section
3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to
the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such
agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion
operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or
(c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender
determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give
Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or
more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in
connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss
by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods,
for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that
Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier
providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be
exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone
determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and
subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification.
Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with
the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and
Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall
cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk,
hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the

Form 3044 1/01

Borrower(s) Initials SH NH

insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

---

TEXAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS                    Form 3044  1/01
Page 8 of 14

IDS, Inc.                                                                      Borrower(s) Initials _SH_ _NH_



**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's




payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall

---

TEXAS–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS                    Form 3044  1/01
Page 8 of 14

IDS, Inc.                                                                 Borrower(s) Initials  *SH*  *NH*



not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.



As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.



Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**25. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**26. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**27. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property. Check box as applicable:**

[X] **Purchase Money.**
The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

[ ] **Owelty of Partition.**
The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

[ ] **Renewal and Extension of Liens Against Homestead Property.**
The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

[ ] **Acknowledgment of Cash Advanced Against Non-Homestead Property.**
The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.



28. Loan Not a Home Equity Loan. The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____ -Witness          _____ -Witness

_____ (Seal)             _____ (Seal)
SHELTON HOWARD                    -Borrower         NIKIA R. HOWARD                    -Borrower

TEXAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS                    Form 3044  1/01
Page 13 of 14

IDS, Inc.



STATE OF TEXAS
County of Harris _____ ss:

Before me A. Smith, Notary Public on this day personally appeared SHELTON HOWARD and NIKIA R. HOWARD, known to me (or proven to me on the oath of _____ or through drivers license ) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she/they executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 29th day of December, 2014.

My Commission Expires: 12-3-15 _____

(Seal)



A. SMITH
Notary Public, State of Texas
My Commission Expires
DECEMBER 03, 2015

_____
Notary Public

Loan originator (organization): ASPIRE FINANCIAL, INC. DBA ASPIRE LENDING; NMLS #: 137773
Loan originator (individual): WILLIAM MARK SEAUX; NMLS #: 654173

TEXAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS                         Form 3044  1/01
Page 14 of 14
IDS, Inc.

Loan Number: 

MIN: **100372700000150907**
Case No.: **626261231322**

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 29th **day of December, 2014,** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the Borrower") to secure Borrower's Note to **ASPIRE FINANCIAL, INC. DBA ASPIRE LENDING, A CORPORATION** (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**3902 HOUSTON LAKE DRIVE**
**PEARLAND, TEXAS 77581**
(Property Address)

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

**Covenants, Conditions and Restrictions of Record**

(the "Declaration"). The Property is a part of a planned unit development known as

**TOWNE LAKE ESTATES**
(Name of Planned Unit Development)

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

---

**MULTISTATE PUD RIDER** - Single Family –                                   **Form 3150 1/01**
**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
                                      Page 1 of 3

IDS, Inc.                                                    Borrower(s) Initials



**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire

---

**MULTISTATE PUD RIDER** - Single Family –
**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Form 3150 1/01

IDS, Inc.

Page 2 of 3

Borrower(s) Initials  *SH*   *DH*



or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F. Remedies. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)          _____ (Seal)
SHELTON HOWARD                  -Borrower        NIKIA R. HOWARD                 -Borrower

MULTISTATE PUD RIDER – Single Family –                                    Form 3150 1/01
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
                                    Page 3 of 3
IDS, Inc.



Loan Number: ▉▉▉▉▉

MIN: 100372700000150907
VA Number: 626261231322

# VA GUARANTEED LOAN AND
# ASSUMPTION POLICY RIDER

## NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

THIS V.A. GUARANTEED LOAN AND ASSUMPTION POLICY RIDER is made this **29th day of December, 2014,** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Deed to Secure Debt (herein "Security Instrument") dated of even date herewith, given by the undersigned (herein "Borrower") to secure Borrower's Note to

**ASPIRE FINANCIAL, INC. DBA ASPIRE LENDING, A CORPORATION**

(herein "Lender")

and covering the Property described in the Security Instrument and located at

**3902 HOUSTON LAKE DRIVE
PEARLAND, TEXAS 77581**
(Property Address)

**V.A. GUARANTEED LOAN COVENANT:** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

If the indebtedness secured hereby be guaranteed or insured under Title 38, United States Code, such Title and Regulations issued thereunder and in effect on the date hereof shall govern the rights, duties and liabilities of Borrower and Lender. Any provisions of the Security Instrument or other instruments executed in connection with said indebtedness which are inconsistent with said Title or Regulations, including, but not limited to, the provision for payment of any sum in connection with prepayment of the secured indebtedness and the provision that the Lender may accelerate payment of the secured indebtedness pursuant to Covenant

---

**VA Guaranteed Loan & Assumption Policy Rider**

Page 1 of 3

IDS, Inc.

Borrower(s) Initials _SH_  _AK_



18 of the Security Instrument, are hereby amended or negated to the extent necessary to conform such instruments to said Title or Regulations.

**LATE CHARGE:** At Lender's option, Borrower will pay a "late charge" not exceeding FOUR per centum (4.000%) of the overdue payment of principal and interest when paid more than FIFTEEN (15) days after the due date thereof to cover the extra expense involved in handling delinquent payments, but such "late charge" shall not be payable out of the proceeds of any sale made to satisfy the indebtedness secured hereby, unless such proceeds are sufficient to discharge the entire indebtedness and all proper costs and expenses secured hereby.

**GUARANTY:** Should the Department of Veterans Affairs fail or refuse to issue its guaranty in full amount within 60 days from the date that this loan would normally become eligible for such guaranty committed upon by the Department of Veterans Affairs under the provisions of Title 38 of the U.S. Code "Veterans Benefits," the Mortgagee may declare the indebtedness hereby secured at once due and payable and may foreclose immediately or may exercise any other rights hereunder or take any other proper action as by law provided.

**TRANSFER OF THE PROPERTY:** This loan may be declared immediately due and payable upon transfer of the property securing such loan to any transferee, unless the acceptability of the assumption of the loan is established pursuant to Section 3714 of Chapter 37, Title 38, United States Code.

An authorized transfer ("assumption") of the property shall also be subject to additional covenants and agreements as set forth below:

(a) ASSUMPTION FUNDING FEE: A fee equal to one-half of 1 percent (.50%) of the unpaid principal balance of this loan as of the date of transfer of the property shall be payable at the time of transfer to the loan holder or its authorized agent, as trustee for the Department of Veterans Affairs. If the assumer fails to pay this fee at the time of transfer, the fee shall constitute an additional debt to that already secured by this instrument, shall bear interest at the rate herein provided, and, at the option of the payee of the indebtedness hereby secured or any transferee thereof, shall be immediately due and payable. This fee is automatically waived if the assumer is exempt under the provisions of 38 U.S.C. 3729 (c).

(b) ASSUMPTION PROCESSING CHARGE: Upon application for approval to allow assumption of this loan, a processing fee may be charged by the loan holder or its authorized agent for determining the creditworthiness of the assumer and subsequently revising the holder's ownership records when an approved transfer is completed. The amount of this charge shall not exceed the maximum established by the Department of Veterans Affairs for a loan to which Section 3714 of Chapter 37, Title 38, United States Code applies.

(c) ASSUMPTION INDEMNITY LIABILITY: If this obligation is assumed, then the assumer hereby agrees to assume all of the obligations of the veteran under the terms of the instruments creating and securing the loan. The assumer further agrees to indemnify the Department of Veterans Affairs to the extent of any claim payment arising from the guaranty or insurance of the indebtedness created by this instrument.

---

**VA Guaranteed Loan & Assumption Policy Rider**
Page 2 of 3

IDS, Inc.

Borrower(s) Initials _SH_   _NH_



IN WITNESS WHEREOF, Borrower(s) has executed this VA Guaranteed Loan And Assumption Policy Rider.

_____ (Seal)
**SHELTON HOWARD**                -Borrower

_____ (Seal)
**NIKIA R. HOWARD**                -Borrower

---

**VA Guaranteed Loan & Assumption Policy Rider**
Page 3 of 3

IDS, Inc.



# FILED and RECORDED

Instrument Number: 2015001030

Filing and Recording Date: 01/09/2015 08:14:02 AM  Pages: 21  Recording Fee: $107.00

I hereby certify that this instrument was FILED on the date and time stamped hereon and
RECORDED in the OFFICIAL PUBLIC RECORDS of Brazoria County, Texas.



Joyce Hudman, County Clerk
Brazoria County, Texas

ANY PROVISION CONTAINED IN ANY DOCUMENT WHICH RESTRICTS THE SALE, RENTAL, OR USE OF
THE REAL PROPERTY DESCRIBED THEREIN BECAUSE OF RACE OR COLOR IS INVALID UNDER
FEDERAL LAW AND IS UNENFORCEABLE.

## DO NOT DESTROY - Warning, this document is part of the Official Public Record.

cclerk-debbiet

2021075323
Total Pages: 3                          AR

## ABSTRACT OF JUDGMENT

### CAUSE NO. EDC21-0224

THE STATE OF TEXAS                    §
COUNTY OF BRAZORIA                    §
                                      §

**Name of Plaintiff in Judgment:**

**CAPITAL ONE BANK (USA), N.A.**
4851 COX RD.
GLEN ALLEN, VA 23060

**Name of Defendant in Judgment:**

**SHELTON L HOWARD**
3902 HOUSTON LAKE DR
PEARLAND TX 77581-4796
SSN#
DOB:
The last three digits of Defendant's driver's
license are unavailable.

**Date of Judgment:**                 October 26, 2021

1. Principal awarded in connection with account
   number XXXXXXXXXXXX0392:           $3,570.13

2. Attorney's fees awarded in connection with
   account number XXXXXXXXXXXX0392:   $0.00

3. Additional fees if Defendant appeals:

4. Interest:                          0.00%

5. Costs of court:                    $46.00

6. Amount due as of November 2, 2021: $3,570.13

                                      *Please call 866-263-0515 for current
                                      balance.

    I, MICHAEL A. MOSS, attorney of record for CAPITAL ONE BANK (USA), N.A., do hereby verify
that the above and foregoing is a true and correct Abstract of the Judgment rendered in said Court in Cause No.
EDC21-0224 in favor of CAPITAL ONE BANK (USA), N.A., Plaintiff in Judgment, vs. SHELTON L
HOWARD, the Defendant in Judgment, in JUSTICE COURT PRECINCT 3, PLACE 1 of BRAZORIA County,
Texas.

    **WITNESS MY HAND** at Lubbock, Texas, on this _____ day of November, 2021.

                                      _____
                                      Michael A. Moss, State Bar No. 24054360
                                      Moss Law Firm, P.C.
                                      5110 80th Street, Suite B, Lubbock, Texas 79424
                                      (806) 796-7375 / FAX (806) 771-0062
                                      Email: e-Service@mosslawfirmpc.com
                                      **ATTORNEYS FOR PLAINTIFF**

STATE OF TEXAS .          }          2021075323     Page 2 of 3
COUNTY OF LUBBOCK          }

**BEFORE ME,** the undersigned Notary Public, on this date personally appeared MICHAEL A. MOSS, who, being by me duly sworn upon oath, said that he had read and signed the foregoing Abstract of Judgment and that all the facts stated in it are within his personal knowledge and are true and correct.

**GIVEN UNDER MY HAND AND SEAL OF OFFICE** this _____ day of November, 2021.

NOTARY PUBLIC, STATE OF TEXAS

RETURN TO:                    NOTARY STAMP:                    RECORDING STAMP:

Moss Law Firm, P.C.
5110 80th Street, Suite
Lubbock, Texas 79424



ALEX HERNANDEZ
My Notary ID # 130631770
Expires May 5, 2024

# FILED and RECORDED

Instrument Number: 2021075323

Filing and Recording Date: 11/15/2021 02:05:55 PM  Pages: 3  Recording Fee: $30.00

I hereby certify that this instrument was FILED on the date and time stamped hereon and RECORDED in the OFFICIAL PUBLIC RECORDS of Brazoria County, Texas.



Joyce Hudman, County Clerk
Brazoria County, Texas

ANY PROVISION CONTAINED IN ANY DOCUMENT WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE REAL PROPERTY DESCRIBED THEREIN BECAUSE OF RACE OR COLOR IS INVALID UNDER FEDERAL LAW AND IS UNENFORCEABLE.

## *DO NOT DESTROY - Warning, this document is part of the Official Public Record.*

cclerk-kaegan

# Exhibit 2

2023000054 FORECLOSURE
Total Pages: 2

Our Case No. 20-02714-FC-2

# APPOINTMENT OF SUBSTITUTE TRUSTEE
## and NOTICE OF TRUSTEE SALE

THE STATE OF TEXAS
COUNTY OF BRAZORIA

**Deed of Trust Date:**
December 29, 2014

**Property address:**
3902 HOUSTON LAKE DR
PEARLAND, TX 77581

**Grantor(s)/Mortgagor(s):**
SHELTON HOWARD AND NIKIA R. HOWARD,
HUSBAND AND WIFE

**LEGAL DESCRIPTION:** LOT 17, IN BLOCK 2, OF SECOND AMENDING PLAT OF TOWNE LAKE ESTATES, SECTION TWO A SUBDIVISION IN BRAZORIA COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 24, PAGES 72-73, OF THE PLAT RECORDS OF BRAZORIA COUNTY, TEXAS.

**Original Mortgagee:**
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS BENEFICIARY, AS NOMINEE FOR ASPIRE FINANCIAL, INC. DBA ASPIRE LENDING, ITS SUCCESSORS AND ASSIGNS

**Earliest Time Sale Will Begin:** 01:00 PM

**Current Mortgagee:**
AMERIHOME MORTGAGE COMPANY, LLC

**Date of Sale:** MARCH 7, 2023

**Property County:** BRAZORIA

**Original Trustee:** MICHAEL BURNS, ATTORNEY AT LAW, ANDERSON, BURNS AND VELA, LLP

**Recorded on:** January 9, 2015
**As Clerk's File No.:** 2015001030
**Mortgage Servicer:**
AMERIHOME MORTGAGE COMPANY, LLC

**Substitute Trustee:**
Steve Leva, Sandy Dasigenis, Jeff Leva, Patricia Poston, Marinosci Law Group PC

**Substitute Trustee Address:**
c/o Marinosci Law Group, PC
14643 Dallas Parkway, suite 750
Dallas, TX 75254
(972) 331-2300

THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEE(S) IDENTIFIED TO SELL THE PROPERTY DESCRIBED IN THE SECURITY INSTRUMENT IDENTIFIED IN THIS NOTICE OF SALE. THE PERSON SIGNING THIS NOTICE IS THE ATTORNEY OR AUTHORIZED AGENT OF THE MORTGAGEE OR MORTGAGE SERVICER.

The current Mortgagee and/or Mortgage Servicer under said Deed of Trust, according to the provisions therein set out does hereby remove the original trustee and all successor substitute trustees and appoints in their stead Steve Leva, Sandy Dasigenis, Jeff Leva, Patricia Poston, Marinosci Law Group PC, as Substitute Trustee, who shall hereafter exercise all powers and duties set aside to the said original trustee under the said Deed of Trust, and, further, does hereby request, authorize and instruct said Substitute Trustee to conduct and direct the execution of remedies set aside to the Mortgagee therein.

WHEREAS, default has occurred in the payment of said indebtedness, and the same is now wholly due and the owner and holder has requested to sell said property to satisfy said indebtedness.

NOW, THEREFORE, NOTICE IS HEREBY GIVEN that on Tuesday, MARCH 7, 2023 between ten o'clock AM and four o'clock PM and beginning not earlier than 01:00 PM or not later than three hours thereafter. The Substitute Trustee will sell the property by public auction to the highest bidder for c                                will be conducted at the

4772077

Brazoria County Courthouse, 111 East Locust Street, Angleton, TX 77515 as designated by the Commissioners' Court, of said county pursuant to Section 51.002 of the Texas Property Code as amended; if no area is designated by the Commissioners' Court, the sale will be conducted in the area immediately adjacent (next) to the location where this notice was posted.

AMERIHOME MORTGAGE COMPANY, LLC, who is the Mortgagee and/or Mortgage Servicer of the Note and Deed of Trust associated with the above referenced loan. The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a servicing agreement with the Mortgagee. Pursuant to the Servicing Agreement and Texas Property code 51.0025, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the property securing the debt.

### ACTIVE MILITARY SERVICE NOTICE

**Assert and protect your rights as a member of the armed forces of the Unites States. If you or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.**

WITNESS MY HAND, January 20, 2023

MARINOSCI LAW GROUP, PC

By: _____
SAMMY HOODA
MANAGING ATTORNEY

THE STATE OF TEXAS
COUNTY OF DALLAS

Before me, Kristina Richardson, the undersigned officer, on this, the 20 day of January 2023, personally appeared SAMMY HOODA, a known to me, who identified herself/himself to be the MANAGING ATTORNEY of MARINOSCI LAW GROUP PC, the person and officer whose name is subscribed to the foregoing instrument, and being authorized to do so, acknowledged that (s)he had executed the foregoing instrument as the act of such corporation for the purpose and consideration described and in the capacity stated.

Witness my hand and official seal

(SEAL)

_____
Notary Public for the State of TEXAS

My Commission Expires: 7-19-2026

Kristina Richardson
Printed Name and Notary Public

```
KRISTINA RICHARDSON
Notary Public, State of Texas
Comm. Expires 07-19-2026
Notary ID 133855058
```

Grantor:   AMERIHOME MORTGAGE COMPANY, LLC   Return to:   MARINOSCI LAW GROUP, P.C.
425 PHILLIPS BOULEVARD                              MARINOSCI & BAXTER
EWING, NJ 08618                                     14643 DALLAS PARKWAY, SUITE 750
Our File No. 20-02714                               DALLAS, TX 75254

```
2023000054
Brazoria County - Joyce Hudman, County Clerk
01/26/2023 10:59 AM
Total Pages: 2
Fee:  0.00
```
Joyce Hudman

Filed for Record
3/1/2023 11:59 AM
Cassandra C. Tigner, District Clerk
Brazoria County, Texas
121844-CV
Alyssa Cook, Deputy

CAUSE NO. _____121844-CV_____

| | | |
|---|---|---|
| SHELTON HOWARD | § | IN THE DISTRICT COURT OF |
| | § | |
| v. | § | BRAZORIA COUNTY, TEXAS |
| | § | |
| AMERIHOME MORTGAGE | § | **412ᵀᴴ** JUDICIAL DISTRICT |
| COMPANY, LLC | § | |

**FILED**
At __1:50__ o'clock __A__ M.

MAR 06 2023

Cassandra Tigner
Clerk of District Court Brazoria Co., Texas
BY_____DEPUTY

## TEMPORARY RESTRAINING ORDER

ON THIS DATE Plaintiff's Application for Temporary Restraining Order was heard and considered before this Court. Based upon the pleadings, exhibits, records, and documents filed by Plaintiff and presented to the Court, as well as the arguments of legal counsel at the hearing, IT CLEARLY APPEARS THAT:

A.     Unless AmeriHome Mortgage Company, LLC, its agents, employees, directors, shareholders, and legal counsel are immediately enjoined and restrained, AmeriHome Mortgage Company, LLC will proceed with a foreclosure sale of Plaintiff's property commonly known as 3902 Houston Lake Dr., Pearland, TX 77581 and Plaintiff will suffer an immediate and irreparable harm and will have no adequate remedies under the law, and may commit the foregoing before notice and hearing on Plaintiff's Application for Temporary Injunction.

B.     Plaintiff will suffer an irreparable harm if AmeriHome Mortgage Company, LLC, its agents, employees, directors, shareholders, and legal counsel are not restrained immediately because Plaintiff will lose her fee simple title and ownership of his Property, which is Plaintiff's residence and homestead and is thus unique and irreplaceable, and there is no adequate remedy at law to grant Plaintiff complete, final, and equitable relief.

C.     Plaintiff has provided notice to AmeriHome Mortgage Company, LLC informing them of the filing of Plaintiff's Application for Temporary Restraining Order prior to this Court

conducting this hearing.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that AmeriHome

Mortgage Company, LLC, its agents, employees, directors, shareholders, and legal counsel are

hereby ORDERED to immediately cease and desist from attempting or proceeding with any

foreclosure sale of Plaintiff's property commonly known as 3902 Houston Lake Dr., Pearland,

TX 77581. AmeriHome Mortgage Company, LLC, its agents, employees, directors, shareholders,

and legal counsel are hereby immediately enjoined and restrained from the date of entry of this

Order until fourteen (14) days hereafter, or until further ordered by this Court.

   **IT IS FURTHER THEREFORE ORDERED, ADJUDGED, AND DECREED** that

Plaintiff's Application for Temporary Injunction be heard on the **20**ᵀᴴ day of March 2023 starting

at **9:00** a.m./p.m. and that AmeriHome Mortgage Company, LLC is commanded to appear at

that time and show cause, if any, why a temporary injunction should not be issued against

AmeriHome Mortgage Company, LLC.

   The Clerk of the above-entitled court shall issue a notice of entry of a temporary

restraining order in conformity with the law and the terms of this Order, to include a copy of this

Order, upon the filing by Plaintiff of the bond hereinafter set.

   This Order shall not be effective until Plaintiff deposits with the Brazoria County District

Clerk a bond in the amount of $ **100.** in due conformity with applicable law.

SIGNED and ENTERED this the **6** day of March 2023, at **9:00** a.m./p.m.

_____
PRESIDING JUDGE

TRUE & CORRECT COPY ON FILE AT BRAZORIA COUNTY, TEXAS
CASSANDRA C. TIGNER, DISTRICT CLERK
2 of 3

THE STATE OF TEXAS      }

COUNTY OF BRAZORIA   }

I, CASSANDRA TIGNER, Clerk of the District Court within and for Brazoria County, Texas, do hereby certify that the above and foregoing is a true and correct copy of Temporary Restraining Order in Cause No. 121844-CV, styled Shelton Howard

v.

Amerihome Mortgage Company as the same appears on the file in the Office of the Clerk of the District Court of Brazoria County, Texas.

Given under my hand and the seal of said Court on this 7th day of March, 2023.



CASSANDRA TIGNER
Clerk, District Court,
Brazoria County, Texas

Digitally signed by
Kristie Wiley
Date: 2023.03.07
14:14:04 -06'00'

Kristie Wiley, Deputy

Filed for Record
9/1/2023 11:39 AM
Cassandra C. Tigner, District Clerk
Brazoria County, Texas
121844-CV
Alyssa Cook, Deputy

CAUSE NO. _____121844-CV_____

| | | |
|---|---|---|
| SHELTON HOWARD | § | IN THE DISTRICT COURT OF |
| | § | |
| v. | § | BRAZORIA COUNTY, TEXAS |
| | § | |
| AMERIHOME MORTGAGE | § | |
| COMPANY, LLC | § | _____ JUDICIAL DISTRICT |

## TEMPORARY RESTRAINING ORDER

ON THIS DATE Plaintiff's Application for Temporary Restraining Order was heard and considered before this Court. Based upon the pleadings, exhibits, records, and documents filed by Plaintiff and presented to the Court, as well as the arguments of legal counsel at the hearing, IT CLEARLY APPEARS THAT:

A.      Unless AmeriHome Mortgage Company, LLC, its agents, employees, directors, shareholders, and legal counsel are immediately enjoined and restrained, AmeriHome Mortgage Company, LLC will proceed with a foreclosure sale of Plaintiff's property commonly known as 3902 Houston Lake Dr., Pearland, TX 77581 and Plaintiff will suffer an immediate and irreparable harm and will have no adequate remedies under the law, and  may commit the foregoing before notice and hearing on Plaintiff's Application for Temporary Injunction.

B.      Plaintiff will suffer an irreparable harm if AmeriHome Mortgage Company, LLC, its agents, employees, directors, shareholders, and legal counsel are not restrained immediately because Plaintiff will lose her fee simple title and ownership of his Property, which is Plaintiff's residence and homestead and is thus unique and irreplaceable, and there is no adequate remedy at law to grant Plaintiff complete, final, and equitable relief.

C.      Plaintiff has provided notice to AmeriHome Mortgage Company, LLC informing them of the filing of Plaintiff's Application for Temporary Restraining Order prior to this Court

Copy from re:SearchTX

conducting this hearing.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that AmeriHome

Mortgage Company, LLC, its agents, employees, directors, shareholders, and legal counsel are

hereby ORDERED to immediately cease and desist from attempting or proceeding with any

foreclosure sale of Plaintiff's property commonly known as 3902 Houston Lake Dr., Pearland,

TX 77581. AmeriHome Mortgage Company, LLC, its agents, employees, directors, shareholders,

and legal counsel are hereby immediately enjoined and restrained from the date of entry of this

Order until fourteen (14) days hereafter, or until further ordered by this Court.

**IT IS FURTHER THEREFORE ORDERED, ADJUDGED, AND DECREED** that

Plaintiff's Application for Temporary Injunction be heard on the _____day of March 2023 starting

at        a.m./p.m. and that AmeriHome Mortgage Company, LLC is commanded to appear at

that time and show cause, if any, why a temporary injunction should not be issued against

AmeriHome Mortgage Company, LLC

The Clerk of the above-entitled court shall issue a notice of entry of a temporary

restraining order in conformity with the law and the terms of this Order, to include a copy of this

Order, upon the filing by Plaintiff of the bond hereinafter set.

This Order shall not be effective until Plaintiff deposits with the Brazoria County District

Clerk a bond in the amount of $_____ in due conformity with applicable law.

SIGNED and ENTERED this the _____day of March 2023, at _____a.m./p.m.

PRESIDING JUDGE

Copy from re:SearchTX



Filed for Record
5/1/2023 11:59 AM
Cassandra C. Tigner, District Clerk
Brazoria County, Texas
121844-CV
Alyssa Cook, Deputy

# BRAZORIA COUNTY DISTRICT CLERK
## ~~DONNA STARKEY~~
Cassandra Tigner

### Process Request – Please Type/Print All Information
*One request for each party being served.

Cause No. ____121844-CV____

**Document(s) to be Served:** _____

Name of Party to be Served: _____

Registered Agent (if applicable): _____

Service Address: _____

City, State, Zip: _____

**Service by: (check one)**

☐BCSO Bo Stallman                    ☐Certified Mail   ☐Restricted   ☒Non-Restricted

☐Constable David Thacker Pct. 1      ☐Return to Attorney by Mail: ___

☐Constable Willie Howell Pct. 2      ___      ___      ___

☐Constable Buck Stevens Pct. 3       ☐Email:        ___      ___

☐Constable James Brawner Pct. 4      ☐Pick up by (Name): _____

---

☐Publication (Name & Address of Newspaper) _____

☐Publication to OCA Portal/Website #of days   ___

☐Posting at Courthouse Door

**Family –**

Relief Requested (Required): _____

Date of Birth/Place of Birth for Each Child (Required): _____

_____

**Civil –** As per TRCP 115, attach legal description of property if applicable and state relief requested.

Relief Requested (Required): _____

Property Description: _____

_____

---

**When Service is by SHERIFF/CONSTABLE, please provide as much information as possible by completing the blanks to expedite service.**

Description:

☐Male ☐Female   Date of Birth_____ Race_____ Eyes_____ Hair_____

Tattoos, Scars, Facial Hair, Glasses, etc._____

Other address person may be found: _____

Gate Access Code_____          Building Number_____

Descr. of house (i.e., trailer park, subdivision):_____

Cell/Home Phone:_____ Work Phone:_____

Any vehicles? Yr_____ Make_____ Model_____ Color_____ LP#_____

Best time to Serve:      ☐Days      ☐Evenings      ☐Nights

Name and address of Employer:_____

List any other information the deputies should know. For example, is party being served known to be violent, owns weapons, mental or physical illness, dogs in yard, locked gates, etc.?

_____

### Service requested by:

Name and Email: _____

Cell/Home Phone:_____ Work:_____

CIVIL DOCKET - CAUSE NO.  121844-CV                412th District Court

| NAMES OF PARTIES | ATTORNEYS | | KIND OF ACTION | DATE OF FILING |
|---|---|---|---|---|
| **Shelton Howard**<br>v.<br>**Amerihome Mortgage Company** | ROBERT C. VILT | -Pla Atty | **Contract - Foreclosure** | 03/01/2023 |
| | | | | Jury Fee Paid: $ |
| | | -Def Atty | | Paid by:<br>Date: |

| DATE | ORDERS |
|---|---|
| 03\|06\|23 | Temporary Restraining Order Signed - 06\|la c |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

Docket sheet front
Copy from re:SearchTX

Filed for Record
3/1/2023 11:59 AM
Cassandra C. Tigner, District Clerk
Brazoria County, Texas
121844-CV
Alyssa Cook, Deputy

CAUSE NO. ___121844-CV___

| | | |
|---|---|---|
| **SHELTON HOWARD** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **v.** | § | **BRAZORIA COUNTY, TEXAS** |
| | § | |
| **AMERIHOME MORTGAGE** | § | |
| **COMPANY, LLC** | § | **412ᵀᴴ JUDICIAL DISTRICT** |

**FILED**
At 11:60 o'clock A.M.
MAR 06 2023
Cassandra Tigner
Clerk of District Court Brazoria Co., Texas
BY_____DEPUTY

## TEMPORARY RESTRAINING ORDER

ON THIS DATE Plaintiff's Application for Temporary Restraining Order was heard and considered before this Court. Based upon the pleadings, exhibits, records, and documents filed by Plaintiff and presented to the Court, as well as the arguments of legal counsel at the hearing, IT CLEARLY APPEARS THAT:

A.     Unless AmeriHome Mortgage Company, LLC, its agents, employees, directors, shareholders, and legal counsel are immediately enjoined and restrained, AmeriHome Mortgage Company, LLC will proceed with a foreclosure sale of Plaintiff's property commonly known as 3902 Houston Lake Dr., Pearland, TX 77581 and Plaintiff will suffer an immediate and irreparable harm and will have no adequate remedies under the law, and  may commit the foregoing before notice and hearing on Plaintiff's Application for Temporary Injunction.

B.     Plaintiff will suffer an irreparable harm if AmeriHome Mortgage Company, LLC, its agents, employees, directors, shareholders, and legal counsel are not restrained immediately because Plaintiff will lose her fee simple title and ownership of his Property, which is Plaintiff's residence and homestead and is thus unique and irreplaceable, and there is no adequate remedy at law to grant Plaintiff complete, final, and equitable relief.

C.     Plaintiff has provided notice to AmeriHome Mortgage Company, LLC informing them of the filing of Plaintiff's Application for Temporary Restraining Order prior to this Court

conducting this hearing.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that AmeriHome

Mortgage Company, LLC, its agents, employees, directors, shareholders, and legal counsel are

hereby ORDERED to immediately cease and desist from attempting or proceeding with any

foreclosure sale of Plaintiff's property commonly known as 3902 Houston Lake Dr., Pearland,

TX 77581. AmeriHome Mortgage Company, LLC, its agents, employees, directors, shareholders,

and legal counsel are hereby immediately enjoined and restrained from the date of entry of this

Order until fourteen (14) days hereafter, or until further ordered by this Court.

**IT IS FURTHER THEREFORE ORDERED, ADJUDGED, AND DECREED** that

Plaintiff's Application for Temporary Injunction be heard on the 20TH day of March 2023 starting

at 9:00 a.m./p.m. and that AmeriHome Mortgage Company, LLC is commanded to appear at

that time and show cause, if any, why a temporary injunction should not be issued against

AmeriHome Mortgage Company, LLC

The Clerk of the above-entitled court shall issue a notice of entry of a temporary

restraining order in conformity with the law and the terms of this Order, to include a copy of this

Order, upon the filing by Plaintiff of the bond hereinafter set.

This Order shall not be effective until Plaintiff deposits with the Brazoria County District

Clerk a bond in the amount of $ 100.00 in due conformity with applicable law.

SIGNED and ENTERED this the 6 day of March 2023, at 9:00 a.m./p.m.

PRESIDING JUDGE

Cause No. 121844-CV

Shelton Howard                                    In the 412th District Court of Brazoria
v.                                                County, Texas
Amerihome Mortgage Company

### Certificate of Cash Bond

Shelton Howard, Applicant in the above-styled and numbered cause, has applied for a Temporary Restraining Order and/or Temporary Injunction in the above referenced case.

WHEREAS, Applicant desires hereby to give bond as required by law in order that the Temporary Restraining Order and/or Temporary Injunction may issue;

THEREFORE, Applicant does hereby deposit in the registry of the District Clerk of Brazoria County, Texas, a cash bond in lieu of sureties in the amount of $100.00, conditioned that the Applicant will abide by the decisions which may be made in the above-styled and numbered cause, and that Applicant will pay all sums of money and costs that may be adjudged against Applicant if the Temporary Restraining Order and/or any subsequent Temporary Injunction shall be dissolved in whole or in part.

FILED
At 11:41 o'clock A. M.

MAR 06 2023

Cassandra Tigner
Clerk of District Court Brazoria Co., Texas
BY_____ DEPUTY

Signed this the 6th day of March, 2023.

_____
(Signature of Payor)

Nicolas Vilt - Vilt law, PC
(Printed Name of Payor)

The following information will be used for the receipts:

Paid By: _Vilt Law, PC_

Address: _5177 Richmond Ave, Ste 1142_

_Houston, TX 77056_

Phone Number: _713.840.7570_

Email: _Nicolas@viltlaw, PC_

Driver's License/Bar Number: _00789586_

Approved:

Cassandra Tigner, District Clerk
Brazoria County, Texas

By_____
Deputy Clerk

Copy from re:SearchTX

Service I.D. No. 250748

## CAUSE NO. 121844-CV

### 412th District Court

THE STATE OF TEXAS

**FILED**
At 2:00 o'clock P M.

MAR 0 7 2023

TO:   AmeriHome Mortgage Company, LLC
CT Corporation System
1999 Bryan St., Ste 900
Dallas, TX  75201

Clerk of District Court Brazoria Co., Texas
BY_____DEPUTY

Defendant

NOTICE:
You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 A.M. on the Monday next following the expiration of twenty days after you were served this citation and **Plaintiff's Original Petition, Application for Injunctive Relief, Demand for Accounting, and Request for Disclosures,** a default judgment may be taken against you.  In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org. If filing Pro Se, said answer may be filed by mailing same to: District Clerk's office, 111 E. Locust, Ste. 500, Angleton, TX  77515-4678 or bringing said answer in person to the aforementioned address.

The case is presently pending before the **412th District Court** of Brazoria County sitting in Angleton, Texas, and was filed on the **1st day of March, 2023.** It bears Cause No.  **121844-CV** and Styled:

**Shelton Howard**
**v.**
**Amerihome Mortgage Company**

The name and address of the attorney filing this action (or party, if pro se) **Robert C. Vilt, Vilt Law, P.C., 5177 Richmond Avenue, Suite 1142, Houston, TX  77056.**

The nature of the demands of said Plaintiff is shown by a true and correct copy of Plaintiff's Petition accompanying this citation

Issued and given under my hand and the seal of said Court, at office in Angleton, Texas on the **7th day of March, 2023.**

**CASSANDRA TIGNER, DISTRICT CLERK**
**Brazoria County, Texas**

By _____ , Deputy
Kristie Wiley

**Certified Article Number**

**9414 7266 9904 2199 3466 67**

**SENDER'S RECORD**

Citation/TRO

9590 9266 9904 2199 3466 60

**ORIGINAL**

Copy from re:SearchTX

Service I.D. No. 250748



**CAUSE No. 121844-CV**

**Shelton Howard v. Amerihome Mortgage Company**

---

## OFFICER'S RETURN BY MAIL

I hereby certify that on the 13th day of _March_, 20 23, the Defendant was served by registered mail or certified mail, with delivery restricted to addressee only, return receipt requested, a true copy of this citation with a copy of the petition attached thereto.   Return receipt attached hereto.

OR

This citation was not executed for the following reason:

_____

_____

_____

**CASSANDRA TIGNER, DISTRICT CLERK**

By _Alyssa Cook_____, Deputy

ATTACH

RETURN

RECEIPT

WITH

ADDRESSEE'S SIGNATURE

Citation/TRO

Copy from re:SearchTX

Service I.D. No. 250748

## TEMPORARY RESTRAINING ORDER

### CAUSE NO. 121844-CV

THE STATE OF TEXAS

To:  **AmeriHome Mortgage Company, LLC**
**CT Corporation System**
**1999 Bryan St., Ste 900**
**Dallas, TX  75201**

WHEREAS, the Plaintiff filed a Petition in the **412th District Court** of Brazoria County, Texas on the **1st day of March, 2023**, in a suit numbered **121844-CV** on the docket of said Court, wherein **Shelton Howard** is Plaintiff and **AmeriHome Mortgage Company, LLC** is Defendant alleging grounds for Temporary Restraining Order and general relief, all of which is more fully shown by a true and correct copy of Plaintiff's Petition which is attached hereto; and upon presentation of said Petition to him and consideration thereof, the Honorable **Justin R. Gilbert** Judge of said court, made the following order thereon: **As set forth in the Certified Copy attached hereto.**

And whereas the Plaintiff has executed and filed with the Clerk of said Court a bond in the sum of **$100.00 (One Hundred and 00/100 Dollars)**, and made payable and conditioned as required by law and the fiat of the Judge.

You are therefore commanded to desist and refrain from such actions (**As set forth in a Certified Copy of the TEMPORARY RESTRAINING ORDER attached hereto**) until and pending the hearing of such Petition upon Plaintiff's Application for a Temporary Injunction before the judge of said court at **9:00 am o'clock** on the **20th** day of **March, 2023**, in the **412th District Court** in the courthouse of Brazoria County, in the City of Angleton, Texas when and where you will appear to show cause why the Injunction should not be granted upon such Petition effective until Final Judgment in such suit.

Issued and given under my hand and seal of said Court, at office in Angleton, Texas on the **7th day of March, 2023.**

**CASSANDRA TIGNER, DISTRICT CLERK,**
**Brazoria County, Texas**

BY _____ Deputy.
Kristie Wiley

Citation/TRO

# ORIGINAL

Copy from re:SearchTX

Service I.D. No. 250748



FILED
At 12:00 o'clock P M.

MAR 2 1 2023

*Cassandra Tigner*
Clerk of District Court Brazoria Co., Texas
BY_____ DEPUTY

## CAUSE No.  121844-CV

### Shelton Howard v. Amerihome Mortgage Company

### OFFICER'S RETURN BY MAIL

I hereby certify that on the 13th day of March , 20 23 , the Defendant was served by registered mail or certified mail, with delivery restricted to addressee only, return receipt requested, a true copy of this citation with a copy of the petition attached thereto.   Return receipt attached hereto.

OR

This citation was not executed for the following reason:

_____

_____

_____

CASSANDRA TIGNER, DISTRICT CLERK

By *Alyssa Cook* , Deputy

ATTACH

RETURN

RECEIPT

WITH

ADDRESSEE'S SIGNATURE

Citation/TRO

Copy from re:SearchTX

Return Receipt (Form 3811) Barcode



9590 9266 9904 2199 3466 60

1. Article Addressed to:

AmeriHome Mortgage Company, LLC
CT Corporation System
1999 Bryan St., Ste. 900
Dallas, TX 75201

2. Certified Mail (Form 3800) Article Number

9414 7266 9904 2199 3466 67

PS Form 3811, Facsimile, July 2015

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X                                            ☐ Agent
                                             ☐ Addressee

B. Received by (Printed Name)          C. Date of Delivery
                                       MAR 1 3 2023

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type:
☒ Certified Mail

Reference Information

121844-CV    412th District Court

Kristie Wiley   Service ID# 250748

Copy from re:SearchTX

Domestic Return Recei



USPS TRACKING #

9590 9266 9904 2199 3466 60

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States Postal Service®**

● Sender: Please print your name, address and ZIP+4® below ●

FILED

At 1:30 o'clock P.M.

MAR 21 2023

Cassandra Tigner
Clerk of District Court Brazoria Co., Texas
DEPUTY
BY

Cassandra Tigner, District Clerk
Brazoria County
111 E. Locust St., Ste. 500
Angleton, TX 77515-4678

CLERK

Copy from re:SearchTX